Jamison, *Trustee*, v. Bancroft.

WILLIAM JAMISON, *as Trustee, &c.*, v. HARVEY BANCROFT, *et al.*

1. TRUST·DEED; *Terms, and Conditions; When not a Guaranty; Rights and Liability of Trustee.* Where the creditors of a firm, composed of B. and others, then in failing circumstances, entered into a written agreement with the firm, that if the firm would assign all their property (describing it) to a trustee, in trust for their benefit, and that if B. and wife would also give to such trustee a mortgage on two lots (describing them) conditioned to make good any deficiency that might occur in the assets of the firm for the payment of such creditors, they would extend the time of payment on their claims one, two and three years, and the firm conveyed to the trustee, in trust for their creditors, their assets, and B. and wife executed to the trustee the mortgage, and made said written agreement a part thereof, and provided therein, if the trustee should well and truly discharge his trust, collect, dispose of, and properly apply the assets to the liabilities of the firm, that if any portion of the indebtness remained unpaid, and the firm, after reasonable notice of the sum so unpaid, should fail to pay the same, then B. and wife were to pay such deficiency, and in case of their failure to pay, the trustee was to sell the mortgaged premises and detain from the proceeds the amount unpaid, *held*, that said written instrument or conditional deed of trust executed by B. and wife, so far as the premises conveyed are concerned, is not to be construed in the nature of a guaranty, but as a *trust* for the benefit of the creditors; and even if the trustee fails to well and truly perform his trust, the court will execute the trust; and any losses occurring by the wrongful action of the trustee, may be charged to him and deducted from the amount otherwise due on the trust deed, after the assets of the firm are disposed of.·

2. CONSTRUCTION OF CONTRACT; *"Reasonable Notice."* Notwithstanding the requirement of reasonable notice to be given to the firm of the

12 — 20 KAS.

amount of their liabilities unpaid, before B. and wife are required by the trust deed to pay such deficiency, where a written notice to two members of the firm is given by the trustee within ten days after the assets of the firm had been disposed of and a like written notice is given to the other members of the firm within twelve months thereafter, and prior to the commencement of the suit to foreclose the trust deed and obtain personal judgment, *held*, further notice not necessary.

3. CONDITIONS OF TRUST DEED; *Substantial Compliance, Sufficient.* The express stipulation in the trust deed, to the effect that the said B. and wife promise and agree to pay the deficiency of the firm on certain conditions stated in said deed, authorizes a personal judgment to be rendered against them both, if a substantial compliance with conditions precedent are shown.

*Error from Lyon District Court.*

FORECLOSURE of mortgage, brought by *Wm. Jamison*, as trustee, against *Bancroft* and wife. All the facts and proceedings are sufficiently set forth in the opinion, *infra.* The district court, at September Term 1876, gave judgment in favor of defendants, and *Jamison* brings the case here on error.

*N. C. McFarland*, and *Gillett & Forde*, for plaintiff:

1. The court clearly erred in not making the additional finding requested by plaintiff. Bancroft and wife could claim nothing more than that the trustee should "fairly and properly collect, sell, or otherwise dispose of the assets of the firm, and apply the proceeds thereof to the discharge of the liabilities." We have the amount collected and applied; and if we had the additional amount which should have been collected and applied, then we could see exactly what Bancroft and wife are liable for, on the mortgage.

2. The mortgage sought to be foreclosed was made in trust "for the security of certain creditors of the late firm of Bancroft Bros. & Co.;" and Bancroft and wife agreed in and by the mortgage to make up any deficiency, after a fair administration of the trust, or whatever there was of the estate was applied. If there are any of the assets lost by negligence of the trustee, that is a question between the trustee and cred-

itors. It can make no difference to Bancroft and wife how much was thus lost, so they get credit for it. But the court would find nothing as to this, though the evidence was full. But the court below finds as law, that the trustee "failed to give reasonable notice to the defendants, Harvey Bancroft, Robert D. McCarter, and Harriet N. Bancroft, as to the manner in which he had discharged the duties of his said trust;" and therefore that the defendants are entitled to judgment. Now Harriet N. Bancroft, the wife, was not entitled to any notice. The court finds that notice was served on two of the members of the firm, October 30th 1873, and on the other members, October 5th 1874; that on the 29th of September 1873, a settlement of the assets had been made, and over $12,000 remained unpaid. Harvey Bancroft must have had notice long before October 1874, as a large number of judgments in favor of the creditors was rendered against him June 26th 1874. It was drawing a fine distinction to find no fault with the first notice, and to find the last insufficient and unreasonable! The agreement attached to the petition, shows that it was contemplated that it would take at least three years to settle this estate, because the time of payment in full was extended that length of time. But the point we make is, that if the trustee did not settle as soon as he ought, and did not give a reasonable notice, that *the trust does not thereby fail.* Jamison was the trustee of both the creditors and mortgagors. It is only claimed that he acted negligently. But neither negligence, nor positive acts of bad faith, nor fraud on the part of the trustee, can nullify the trust. The trustee may die, or be removed, but the trust continues. No act of the trustee shall prejudice the *cestui que trust.* (Tiffany and Bullard on Trusts, 818; Perry on Trusts, §§ 38, 240, 248.)

3. The court clearly erred in striking from the petition the words, "then the said Harvey Bancroft and Harriet N. Bancroft promise and agree to pay such deficiency," and the prayer for a personal judgment. If this agreement does not warrant a personal judgment for such deficiency, it is difficult

to see what form of statement could be adopted. This promise and agreement are in the mortgage, and the mortgage is part of the petition. Why did the court not order it stricken from the *mortgage* also?

We ask the court to reverse the judgment of the court below; to direct that court to find the amount (if any) that the trustee should account for, in addition to that already accounted for, to deduct that amount from the $12,200.74 found to be still due the creditors; also deducting the $200; to render personal judgment against Bancroft and wife for balance, (if any,) and order the real estate mentioned in the mortgage to be sold to pay the same.

*Ruggles, Scott & Linn*, for defendants:

1. The mortgage in suit is in the nature of a guaranty. It needs no argument to show that it is not an undertaking to pay absolutely any deficiency that may arise, but only conditionally. It does not absolutely pledge the property described therein, and give the mortgagee a right to foreclose *in any event* should a deficiency exist, but simply the right to do so, provided, or *if he* (the mortgagee) *does certain things* and others fail to do certain things. The promise of Bancroft and wife is conditioned upon Jamison's faithful discharge of his trust, etc., and the failure of Bancroft Bros. & Co., after due notice, to pay; and that Jamison's right to resort to this homestead is conditioned upon Jamison's faithfulness, Bancroft Bros. & Co.'s failure to pay, after due notice, and the mortgagor's own failure to pay. Plaintiff in error realized the correctness of this view, and in his petition alleged "that as trustee as aforesaid he duly performed all the conditions on his part to be performed," and that he gave the notice required. If these conditions are not *all* conditions precedent to the plaintiff's rights under the mortgage, then *none* of them are, and the plaintiff had the right to call upon Bancroft and wife to pay, and to foreclose this mortgage for just such an amount as he saw fit to call a deficiency, and a t such time as to him seemed proper. It is impossible for us

to see how the fact that Bancroft was liable to these creditors for this old indebtedness, affects the principle here involved, or in any way released Jamison from the full performance of the conditions resting on him by the terms of the mortgage he seeks to foreclose. Suppose that this agreement (exhibit A) had provided that these firm assets should be turned over to the creditors direct, without the intervention of any trustee, and that the mortgage should go to them, and that they receive from Bancroft and wife the mortgage now before this court, and sought to foreclose it: would they be excused from alleging and proving that they had performed these conditions on the plea that at the time of the execution of the mortgage Bancroft, outside of anything contained in the mortgage, owed and still owed them the indebtedness of Bancroft Bros. & Co.? We apprehend not. And in what better condition to do this is Jamison, who stands in their shoes? Granting however, that, so far as Bancroft is concerned, he is absolutely and unconditionally bound to pay this deficiency anyway, we still insist that Mrs. Bancroft is not and never was so bound, and therefore this homestead can only be taken when and under such conditions as she in this mortgage consents it may be taken. The debt secured was not her debt. She could only be called upon to pay in strict conformity to the letter of her bond; and, so far as she is concerned, all these conditions to be performed by Jamison or any one else are *conditions precedent.* It is a clear case of guaranty; and it is not only incumbent on the plaintiff here to allege and prove that the terms of the guaranty have been strictly complied with, but also to allege and prove the performance of the conditions precedent. 4 McLean, 581; 13 Wend. 544; 38 Barb. 104; 56 Barb. 80; 40 N. Y. 181; 3 Eng. C. Law, 404; 15 Eng. C. Law, 514; 29 Eng. C. Law, 210; 12 Wend. 452; 6 Cowen, 624; 19 Johns. 69.

How in the face of the 11th finding counsel can claim that plaintiff has any right to foreclose, puzzles us. The mortgage says *if* Jamison *does* the things which the court finds he did *not* do, then B. and wife will pay, and if they fail he

may then foreclose; and therefore *if* he does not do them he has no claim upon B. and wife, and cannot foreclose.

If we are correct in the proposition, that under the terms of this mortgage the thing to be done by Jamison constitutes a condition precedent to his right to call upon Bancroft and wife to pay any deficiency, or to his right to foreclose this mortgage, and as the court affirmatively finds that Jamison did not perform the condition, then we submit that there was no error, or at least no error that substantially affected or that could so affect the plaintiff in the court's refusal to find as requested; for if our views are substantially sound, it was a matter of entire indifference whether the additional amount that might have been realized by a proper performance was $2,000, or enough to pay the entire deficiency. In either event, the facts still remain that Jamison did not well and truly discharge his duties and did not fairly and properly collect and convert these assets, and therefore he had no cause of action against defendants in error.

And again. Over two years after all these assets should have been converted into cash, Jamison sells $1,700 of uncollected assets at public auction to one Shields for $40. Shields failed to take them, and Jamison took them, charging up himself $60 in his account with said trust, and crediting the trust funds therefor. Among these assets was a note of $200, fully secured by mortgage on real estate, and on this note plaintiff afterward collected $212, and now claims he still holds said amount for the benefit of the creditors named in said trust. It isn't necessary to characterize this little transaction. The fact remains, that this $212 never has been applied on the indebtedness of Bancroft Bros. & Co., or distributed among these creditors, and here is another condition precedent unperformed, and therefore plaintiff has no cause of action.

2. Did the district court commit any substantial error — such error as should reverse the judgment — in striking from the petition the portions named? On this we submit, that it is immaterial whether or not the court erred in striking

from the body of the petition the statement in reference to the personal promise and agreement of Bancroft and wife, because such statement is contained in the mortgage attached to and made a part of the petition, and such mortgage was not stricken out and is now a part of the amended petition. The plaintiff, therefore, was not prejudiced by the action of the court.

But if the plaintiff, under his petition and exhibits A and B attached thereto, could in any event recover a personal judgment against Harvey Bancroft and his wife, then it was error for the court to strike out the prayer for personal judgment, and error too of which he has a right to complain in this court, provided the evidence and findings of the court do not show that he had no cause of action whatever against these defendants. If he had no cause of action, then the error, if any there was, did not prejudice his rights; and that he had no cause of action, we have heretofore attempted to maintain. Was the plaintiff, on the face of his petition, entitled to a personal judgment against these mortgagors, Bancroft and wife? We say he was not. If plaintiff could in any event be entitled to such judgment, it is by virtue of the stipulations in the conditions of the mortgage; and our contention is, that there is nothing there in the nature of a contract between Bancroft and wife and Jamison, upon which the latter could sue the former and obtain personal judgment. There is simply a promise, without any consideration moving either from Jamison, individually or as a trustee, or moving from any one else to these parties, that they will pay this deficiency, and a provision that upon failure to do so Jamison may sell the mortgaged property and apply the proceeds to the satisfaction of such deficiency. The whole instrument constitutes nothing more than a grant as security for any deficiency. It don't recite any indebtedness of these mortgagors to this mortgagee, and the language used cannot be construed as it would be in an ordinary mortgage from A. to B. to secure an indebtedness due or to become due from A. to B. But it may be said that the petition alleges and the

mortgage itself shows that the mortgage was given in pursuance of the trust agreement, and for the purpose specified therein; that the mortgage must be construed as though the terms of the trust agreement were all incorporated therein, and this we may concede to be correct so far as Harvey Bancroft is concerned, because he is a party to both; and it may be further said that this agreement shows a full consideration for *his* promise to pay Jamison as trustee this deficiency, because the time for the payment of the debts of the old firm of Bancroft Bros. & Co. was extended in consideration that he and his wife should execute a mortgage on this real estate, conditioned that *he* (Bancroft) should pay the deficiency. In connection with this, we submit that this trust agreement did not of itself, nor did it and the mortgage combined wipe out any of these old debts, nor did it substitute Jamison as the creditor of Bancroft Bros. & Co., or of any member of said firm. (*Bobb v. Bancroft,* 13 Kas. 123.)

3. Did the district court err in its first conclusion of law? If the facts and findings of the court show that plaintiff had no cause of action, as we have endeavored to establish, then, even if this finding is erroneous, it don't prejudice the plaintiff, or affect the judgment. We admit that Harriet N. Bancroft was not entitled to notice. We think the conclusion is not broad enough. On the facts found in respect to this notice, (and they are undisputed,) the conclusion should have been, that the plaintiff failed to give a reasonable notice, as required by the mortgage sought to be foreclosed to Bancroft Bros. & Co., or to any member of the firm: but we have no complaint to make on this score. The whole conclusion might be stricken out, and the rights of neither party would be affected thereby, because if the second and third conclusions of law are, or the third alone is, sustained by the *facts* found by the court, the judgment must stand, unless the other proceedings of the court disclose sufficient error to reverse it.

4. "But," say counsel for plaintiff, "the point we make is, that if the trustee did not settle the estate as soon as he

ought, and did not give a reasonable notice, that the trust does not thereby fail. Neither negligence, positive acts of bad faith, nor fraud on the part of the trustee, can nullify the trust. The trustee may die or be removed, but the trust continues," etc. What has all this to do with the rights of these parties to this mortgage? This kind of language might be very pertinent in an appropriate case. We are not insisting, nor is it necessary for us to claim, that any *trust* disclosed in this case failed, or was nullified by any negligence, bad faith, fraud, or any other act of the trustee. We are only insisting that this plaintiff shall not sell our homestead under a mortgage giving him the power to sell in certain contingencies until the contingencies named arise. It is folly to speak of Jamison as the trustee of Bancroft and wife, in the sense that counsel here use the word. He is their trustee to just the same extent and no more, as would have been these creditors (whose representative he is in this mortgage) had their names been inserted in the mortgage. Under such a mortgage as this, and the theory of our law, we don't see how any trust can arise between mortgagors and mortgagee. It is a mere lien. There is no right of possession, nor control over the rents and profits in the mortgagee, and as the mortgaged property can only be sold by decree of court, and the court holds the proceeds of the sale and distributes them, the mortgagee never has control of any surplus moneys belonging to the mortgagors. Upon what then would a trust between these parties be predicated? What would be the effect of the conduct of the trustee in relation to the trust created by the trust agreement and the assets thereby transferred and conveyed to the creditors, as between Bancroft Bros. & Co. and their creditors, is a question not pertinent to the case under consideration, because the court is not called upon to investigate that question; and the point here is, what effect did the action or non-action of this mortgagee as the representative of these creditors under the mortgage before the court have upon the rights of the mortgagors and the right of the mortgagee to foreclose. This plaintiff is treating this

instrument as a mortgage, and is seeking to foreclose it as such. The fact that the mortgagee is a *trustee* for these creditors does not in the least change its character as a mortgage. 22 Cal. 116–225; 1 Brown's Ch. 324; 4 Madd. Ch. 101. It is certainly a very potent fact, if it gives a court power to wipe out these stipulations, to make a new contract and force the mortgagors to pay this money or surrender their homestead when and under circumstances they never agreed to. To us this idea seems just as preposterous and no more than to hold that because a mortgagee is a trustee he can foreclose *before* the debt secured is due. In this case the *time* for the fulfillment of the mortgagor's promise *had not arrived*.

This mortgage substantially provides that the mortgagee will not hold the mortgagors liable on their promise and agreement therein, nor enforce the mortgage against them, unless said mortgagee shall do certain things, and others fail, after reasonable notice, to do certain other things; and we submit that this action cannot be maintained unless these provisions are complied with. 7 Iredell Eq. 207; *Curtis v. Goodenow*, 24 Mich. 18.

The opinion of the court was delivered by

HORTON, C. J.: On the 11th of March 1870, the creditors of Bancroft Bros. & Company, who were in failing circumstances, at Columbus, Ohio, entered into an arrangement in writing with the firm to the effect, that if they would assign all the property they possessed, (describing it,) to William Jamison, in trust for their benefit, and that if Harvey Bancroft and wife would also give to Jamison, as trustee, a mortgage on two certain lots in the city of Emporia, (describing them,) conditioned to make good any deficiency that might occur in the assets of said firm toward the payment of the creditors, then that they would extend the time for payment of their respective claims, one, two, and three years. Thereupon said Bancroft Bros. & Company did convey and assign to said Jamison, (the plaintiff,) in trust for said creditors the assets of said partnership, and

*Statement of the case.*

Harvey Bancroft and wife did execute and deliver to said Jamison, as trustee, a mortgage on the said lots in Emporia, in which they referred to the said written agreement (of March 11th 1870) of the creditors with Bancroft Bros. & Company, and further set forth, that if the said Jamison should well and truly discharge the duties of his trust, and collect, dispose of, and properly apply the proceeds of such collections and sales to the liabilities of said firm, if any portion of said indebtedness should still remain unpaid, and if said firm, after reasonable notice of the amount so unpaid, should fail to pay the same, "then the said Harvey Bancroft and Harriet N. Bancroft, agree to pay such deficiency in three equal annual payments after the date thereof," and that in case of their failure to pay, then the said trustee was to sell the mortgaged premises, and out of the money arising from the sale to retain the amount which remained unpaid, upon the said indebtedness of the firm.

This suit was brought in the court below to foreclose the conveyance of said Harvey Bancroft and his wife. The original petition set forth the agreement of the creditors with the firm, of March 11th 1870 — the conveyance of the lots in the city of Emporia — and alleged that after a proper application of the assets of the firm on its indebtedness, and after reasonable notice thereof to the firm, there remained unpaid and due the creditors $12,286.74, with interest thereon from August 1871, with the usual averments in such petitions, and a demand for personal judgment against Bancroft and wife, and for the foreclosure of the mortgage, etc. On motion of the defendants, Bancroft and wife and W. T. Soden, the court struck out of the petition the allegation "that said Bancroft and wife agreed and promised to pay the deficiency in three equal annual payments," and the demand for a personal judgment. Afterward the petition was amended to conform to the ruling of the court, and the said defendants answered by general denial. The case was tried to the court, a jury being waived, and the plaintiff requested the court to

find the conclusions of fact and law separately.    The follow-
ing are the findings of fact:

1st.—At the city of Columbus, in the state of Ohio, on the
11th of March 1870, the plaintiff, William Jamison, was by
instrument of writing duly appointed a trustee by certain
creditors of the late firm of Bancroft Brothers & Company,
for the purposes set out and described in exhibit "A" attached
to plaintiff's petition.   Said plaintiff as such trustee imme-
diately qualified and entered upon the discharge of the duties
of said trust.

2d.—Immediately upon the acceptance of said trust by said
plaintiff, the said firm of Bancroft Bros. & Co. conveyed to
said trustee, and put him in the possession of all the prop-
erty, real and personal, set forth and described in exhibit
"A" attached to plaintiff's petition, for the purposes therein
expressed. ·  .

3d.—On the 28th of March 1870, the defendants Harvey
Bancroft and Harriet N. Bancroft his wife, executed and de-
livered to said plaintiff, trustee aforesaid, their mortgage
deed, and thereby conveyed to him lots Nos. 133 and 135,
Commercial street, in the city of Emporia, Lyon county,
Kansas, for the purposes, and upon the conditions set forth
and described in said mortgage deed, a copy of which is
attached to plaintiff's petition and marked exhibit "B."   At
the time of the execution of said mortgage deed by said
Harvey Bancroft and his wife, the premises therein con-
veyed were and for a long time prior thereto had been their
homestead.

4th.—On the 5th of October 1874, the said plaintiff as such
trustee caused a written notice to be served on Harvey Ban-
croft and Robt. D. McCarter, members of the firm of Bancroft
Bros. & Co., and Harriet N. Bancroft, notifying them that
he had collected all the accounts and bills receivable, as far
as he had been able to collect the same, and had converted
the real estate transferred to him as such trustee into money,
and had applied all the proceeds of said accounts, bills re-
ceivable, and real estate, upon the indebtedness of said firm
of Bancroft Bros. & Co., and that there remained due and
unpaid to the creditors of said firm of Bancroft Bros. & Co.
the sum of $12,127.74, with interest thereon from August
3d 1871.

5th.—On the 30th of October 1873, the said plaintiff, as
such trustee, caused a written notice to be served on Robert

E. Sheldon and Carl N. Bancroft, members of the firm of Bancroft Bros. & Co., notifying them that he had, on the 29th of September 1873, completed the collections of all the accounts and bills receivable of Bancroft Bros. & Co., and had converted all the real estate transferred to him as trustee for the benefit of the creditors of Bancroft Bros. & Co., and had applied the proceeds of said collections and sales upon the indebtedness of said firm of Bancroft Bros. & Co., and that after deducting his expenses as trustee, and applying said proceeds upon said indebtedness, there remained still due and unpaid to the various creditors (naming them) of said firm of Bancroft Bros. & Co., the sum of $12,286.74, with interest thereon from 3d August 1871.

6th.—Said plaintiff, as trustee aforesaid, has realized out of the assets of the said firm of Bancroft Bros. & Co. the sum of $9,527.92.

7th.—Said plaintiff, as trustee aforesaid, has paid and expended, in expenses and in payment of incumbrances on the property conveyed to him as trustee, the sum of $4,128.94. Said plaintiff, as trustee aforesaid, has paid to the creditors of the firm of Bancroft Bros. & Co. the sum of $5,411.73.

8th.—At the commencement of this action, there remained due and unpaid to the creditors of the late firm of Bancroft Bros. & Co. the sum of $12,200.74, with interest from August 1st 1871.

9th.—The said creditors of the said firm of Bancroft Bros. & Co., mentioned and set out in the mortgage in question, did, in accordance with the conditions therein contained, extend the time of payment of their said claims against the said firm of Bancroft Bros. & Co. one-third in one year, one-third in two years, and one-third in three years, from the 11th of March 1870.

10th.—The sum of $660 is a reasonable attorney-fee for the foreclosure of the mortgage in this action.

11th.—Said plaintiff, as trustee of the creditors of the firm of Bancroft Bros. & Co., has not well and truly discharged the duties of his said trust, and has not fairly and properly collected, sold, or disposed of the bills receivable, and other property transferred to him as such trustee, with a due regard for the interests of the said firm of Bancroft Bros. & Co.

12th.—On the 29th of September 1873, the said plaintiff, as trustee aforesaid, for the purpose of closing said trust, sold that portion of the bills receivable and accounts in his hands as such trustee, and not theretofore disposed of, amounting

to about $1,700, at public auction, to one Shedd, for $40, and said Shedd failing to take the same under said sale, said plaintiff himself took said bills receivable and accounts, and charged himself in his account with said trust the sum of $60, and credited the trust funds with that amount.

13th.—Among said bills receivable was a note of $200, not then due, and fully secured by mortgage on real estate, which note was afterward, and subsequently to the giving of the notices hereinbefore mentioned, collected by said plaintiff, the amount being about $212, and said plaintiff now claims, that he still holds said amount for the benefit of the creditors named in said trust.

14th.—A large proportion of the accounts, bills receivable, and real estate mentioned in said trust-deed, were collected and converted into money by said plaintiff, as such trustee, subsequent to the 11th of March 1871, and prior to the 29th of September 1873.

15th.—The firm of Bancroft Bros. & Company consisted of Harvey Bancroft, Carl N. Bancroft, Robert E. Sheldon, and Robert D. McCarter.

The court thereon found the following conclusions of law:

1st.—The plaintiff, as trustee aforesaid, failed to give reasonable notice to the defendants Harvey Bancroft, Robert D. McCarter, and Harriet N. Bancroft, as to the manner in which he had discharged the duties of his said trust, required of him by the terms of the mortgage sought to be foreclosed in this action.

2d.—The plaintiff is not entitled to a judgment and decree in this action foreclosing the mortgage in question.

3d.—The defendants Harvey Bancroft and Harriet N. Bancroft are entitled to a judgment for their costs herein expended.

The plaintiff requested the court to find the additional amount that might have been realized or secured for the creditors by the exercise of proper diligence in the management of the estate, which the court refused to do. Exceptions were taken to this refusal, to the findings of fact, and of law, by the plaintiff, and the case is brought here by him for review.

The main question of the case is, the legal effect of the

11th finding of fact, that, "The said plaintiff, as trustee of the creditors of the firm of Bancroft Bros. & Co., has not well and truly discharged the duties of said trust, and has not fairly and properly collected, sold, or disposed of the bills receivable, and other property transferred to him as such trustee, with a due regard for the interests of the said firm of Bancroft Bros. & Co." Involved in this, is the character of the written instrument executed by Bancroft and wife, and set forth in the petition. It is insisted by the counsel of Bancroft and wife, that this instrument is in the nature of a guaranty; that the promise of the latter is conditioned upon Jamison's faithful discharge of his trust, etc., and the failure of Bancroft Bros. & Co., after due notice, to pay; and that plaintiff's right to resort to the premises in suit is conditioned upon the plaintiff's faithfulness, Bancroft Bros. & Co.'s failure to pay, after due notice, and the mortgagors' own failure to pay; in other words, that the conditions required to be performed by the plaintiff by the agreement of March 11th 1870, and the instrument executed by Bancroft and wife, are *all* conditions precedent to the right to foreclose and sell the premises. This view of the case was upheld and maintained by the trial court, we should judge, from the result and the refusal to make the additional finding asked by the plaintiff. In our judgment, the instrument sued on will not bear this construction. The agreement of March 11th 1870, is referred to and made a part of the conveyance executed by Bancroft and wife; and the instrument thus executed and accepted created an obligation upon the plaintiff arising out of a confidence reposed in him to apply the property named faithfully, and according to such confidence. The trust, although conditional, is an express one, as the property, persons, and the purposes of the trust, are specifically pointed out. In dealing with trusts of this character, courts will not allow the trust to fail, or to be defeated, by the refusal or neglect of the trustee to execute the same; nor for any act or omission of the trustee; nor even for want of a trustee. If the trustee dies, or refuses to accept

1. Trust deed; terms and conditions, construed.

the trust, or is incapable of performing it, a court of equity will give to the *cestuis que trust* the proper relief, either by executing it, or appointing a trustee for that purpose. Trust deeds for the payment of debts have always been favorably regarded in equity, and they will be supported, if possible, notwithstanding any informality which might have invalidated them at law. As far as possible the intention of the parties is to be pursued, and the general object and purpose of the trust will be carried out. No technical construction will be permitted to defeat the interests of the beneficiaries, nor can the trustee after having accepted the trust defeat the same by his own act. Tested by these elementary principles, we must hold the failure of the trustee to properly appropriate the $212 collected on a note belonging to the trust fund not a cause to prevent the execution of the trust. Even if a greater sum had been retained, or losses have occurred by his action, that is a question between the trustee, Bancroft Bros. & Co., and the creditors. It can make no difference to Bancroft Bros. & Co. how much was retained or lost, if any, by the wrongful action of the trustee, if the firm get credit for it, and the same is applied to reduce their indebtedness, provided of course (as in this case) no claim is made that the misappropriation or loss is in excess of the debts. Bancroft and wife are not any the more injured, nor is the deficiency to be paid any greater, whether the trustee well and truly discharges his trust, and the proceeds of all the property mentioned in the agreement of March 11th 1870 are applied to lessen the firm's debts, or the proceeds appropriated by the trustee are charged to him and deducted from the amount of the firm's indebtedness. In either case, the deficiency, if any, would be the same, and the liability of Bancroft and wife not increased. If the theory of the counsel for the defendants is sustained, then, after the firm has succeeded in getting an extension of the time for payment of their debts by the transfer and pledge of certain assets, the creditors could be prevented from obtaining the benefits of the trust fund, if the trustee, against their wishes, wrongfully

appropriated to himself a single dollar, or a less sum. Such a technical construction cannot be adopted in this case. If the trustee has been unfaithful, he must be held to account for any losses thereby arising. But the trust must be executed, and in no manner made heavier or more burdensome to the grantors by the acts of the trustee. If losses have accrued by his action, or non-action, they are to be deducted from any deficiency claimed. These are to be charged to the trustee, and cannot be collected from the trust fund described in the instrument sued on. The court below having found that the trustee had not well and truly discharged the duties of his trust, etc., should not have stopped thus short, and so defeated the trust, or held it in abeyance; but that it might be executed, should have further found the amount retained by the trustee, if any, and the losses which occurred by his acts, if any. It clearly committed error in refusing to make the additional finding demanded by the plaintiff. The amount that might have been secured to the creditors, in addition to the sums reported, by the exercise of proper diligence in the management of the estate, could then have been deducted from said $12,127.74.

Thus much, upon the assumption that there was a loss by the conduct and neglect of the trustee in closing up the business of the firm, and that the premises mortgaged are to be treated as a conditional trust fund in the hands of a court of equity, which looks to substance rather than forms, and exacts equity rather than the performance of every minute particular of a condition. But in view of the claim for a personal judgment against Bancroft, who was one of the members of the firm, and also against the wife, who only became liable by the execution of the instrument signed by her, it is necessary to further refer to the findings, as to the matters in which neglect of duty is asserted. As to their personal liability, it may be conceded that this rests upon the strict construction of a court of law, and not a court of equity. The question then arises, have the conditions of the trust deed, on which the personal

13—20 kas.

liability of Bancroft and wife depends, been substantially performed? The statement in the 11th finding of fact, that the trustee "has not well and truly discharged the duties of the trust," is *apparently* explained and limited by the findings which immediately follow. The unfaithfulness of the trustee is based upon the following facts: On September 29th 1873, for the purpose of closing the trust, he sold that portion of the bills receivable and accounts in his hands, of the face of $1,700, at public auction to one Shedd for $40, and Shedd failing to take the same under the sale, the trustee took said bills receivable and accounts, and charged himself in his account with the trust, the sum of $60, and credited the trust funds with the amount. He afterward collected (and subsequent to the notices given to the firm of his disposition of the assets) $212 on a note, among said bills receivable, and holds the amount for the benefit of the creditors of the trust. Further, a large proportion of the accounts, bills receivable, and real estate mentioned in the trust, were collected and converted into money by the trustee subsequent to the 11th March 1871, and prior to September 29th 1873. Certainly, the trustee had no legal right to buy in any of the accounts or bills receivable; but as he has collected all that he could from them, and holds the same for the creditors, and no finding having been made that the balance are of any value, and the fact being apparent that one purchaser refused to pay $40 and take them, there seems good reason to conclude that the said $212 is all that can be obtained from them. This, the court can easily deduct from the $12,127.74, and apply to the creditors. Then, as no loss is shown by the delay of the trustee prior to September 29th 1873, either to the trust fund, or to Bancroft and wife, this finding is immaterial, or at least does not affect the issues, even if the estate should have been all settled by March 11th 1871. In this light, the conditions precedent to the personal liability of Bancroft and wife have been substantially complied with. The mere fact, that the trustee has not *actually* paid over the $212, although he reports that he holds it for

the creditors, and is ready to apply it to the indebtedness of the firm, is a mere technical noncompliance, as the court in the case had the right to have the application fully made before judgment. If the findings of fact have been in any way too liberally construed in favor of a compliance of the precedent conditions set forth in the deed of trust on the part of the trustee, by the writer of this opinion, the statement cannot affect the defendants in error injuriously, as a new trial is awarded, and on the re-trial no personal judgment will be allowed under our decision against Bancroft or wife unless the trial court shall find a substantial compliance with these conditions.

The court committed error in its first conclusion of law, concerning its finding of want of reasonable notice to the firm. The conclusion of law is not sustained by the findings of fact. Prior to the commencement of this action, written notice was served (on 30th October 1873) on two members of the firm, and on 5th October 1874 like notice was served on the other members of the firm; and it appears that the trustee did not close up the trust till about September 29th 1873. If there was unnecessary delay in disposing of the trust fund, or assets, and in giving the notice required by the papers, so long as the same was given prior to the suit, and the firm has refused all this time to pay any of the deficiency, and no loss is shown to the fund, or any of the parties, such delay is no reason for a refusal of a sale of the premises in controversy, or a personal judgment for any deficiency. The instrument executed by Bancroft and wife expressly stipulates that they will pay the deficiency of the indebtedness remaining unpaid, after the application of certain assets to the indebtedness of the firm, and certain notices are given. The court likewise committed error in striking from the petition the averment of such agreement, and that portion of the prayer making a demand for personal judgment. The consideration of the trust deed was ample; and the fact that the real estate was a homestead, cuts no figure in this case.

*3. Notice of execution of trust.*

*Mortgage on homestead.*

If A. for a sufficient consideration gives a note, secured by a real-estate mortgage on his homestead, and the note and mortgage are voluntarily and duly executed by A. and his wife, it is no defense to either, that the husband received *all* the consideration; nor can a sale of the mortgaged premises be defeated solely because it includes their homestead. The wife in this case voluntarily signed the conveyance, or deed of trust, and thus assumed alike with her husband all the deficiency of the firm not paid by them or from their assets; and if she thoughtlessly or improvidently executed the instrument, we have no power to relieve her from her misfortune.

A question might be presented, whether the filing of the amended petition did not waive the errors complained of, which caused the modification of the petition before the trial; but as there seems to be some question whether the said $212 was the only sum to be deducted from the $12,127.74, and as the plaintiff asked for (but failed to obtain) an additional finding, to which he was entitled, the case must go back to the court below, and there the error, as to the suppression of a part of the original petition, can be remedied by inserting, with leave of the court, in the amended petition, the portions stricken from the original.

The plaintiff in error asks us to reverse the judgment of the court below, to direct that court to find the amount, if any, that the trustee should account for in addition to that already accounted for, to deduct that sum from the $12,127.74 found to be still due the creditors, also deducting the $212, to render personal judgment against Bancroft and wife for balance, if any, and order the real estate contained in the deed of trust to be sold to pay the same. All of this, considering the record, we cannot do. No judgment will be directed by us to be entered on the findings, in view of the general character of the one relating to the trustee's unfaithfulness. If the court had found the additional fact asked, and such sum had been, with the $212, less than the $12,200.74 reported, we could have directed judgment for the plaintiff. We can-

not refer the cause to the court below to make additional findings, without a new trial. We can reverse the judgment for erroneous conclusions of law, and for the error committed in the refusal to make all necessary findings demanded, and we can state the law, as applicable to the case now presented, as direction on another trial. This is all.

The judgment of the district court will be reversed, and a new trial awarded.

All the Justices concurring.